Filed 4/11/13  P. v. Lozano CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>SAMMY LOZANO,<br><br>　　　Defendant and Appellant. | B233393<br><br>(Los Angeles County<br>Super. Ct. Nos. TA077104 & TA080053) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Allen Joseph Webster, Judge.  Affirmed with directions.

George L. Schraer for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Stephanie A. Miyoshi and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Sammy Lozano, appeals the denial of his post-judgment motion seeking to reinstate a plea bargain, following his conviction by jury trial for premeditated attempted murder (2 counts), assault with a firearm (2 counts), shooting at an occupied motor vehicle, and possession of a firearm by a felon, with firearm enhancements (Pen. Code, §§ 664, 187, 245, subd. (a)(2), 246, 12021 (former), 12022.53, 12022.5),[1] He was sentenced to life.

The judgment is affirmed with directions.

## PROCEDURAL BACKGROUND

This is Lozano's second appeal. In *People v. Lozano* (Nov. 19, 2008, B198578)[nonpub.opn.] [Klein, P. J. with Kitching & Aldrich, JJ.]), we affirmed his convictions for premeditated attempted murder, assault with a firearm, shooting at an occupied motor vehicle, and possession of a firearm by a felon. Those convictions arose out of the following incident.

In the early morning hours of November 14, 2004, Jennifer Rodillas was driving her Honda Accord northbound on the 110 Freeway, going toward the 405 Freeway. Her boyfriend, Duke Tago, was in the front passenger seat. There were no other cars on the road. Rodillas looked in her rearview mirror and noticed a Nissan Xterra SUV speeding toward her. She moved into the left lane to allow the Nissan to pass, but it pulled up alongside and kept pace with her. As Rodillas approached the 405 Freeway interchange, she tried to get back into the right lane, which was the transition lane, but the Nissan would not let her merge and forced her to stay on the 110 Freeway. Then Rodillas heard two gunshots. Two bullets hit her car; one shattered the passenger window and one cracked the windshield. The shot that hit the passenger window impacted about two inches from Tago's head.

After the shooting, Rodillas changed lanes, but the Nissan pursued her by driving over a grassy embankment. The Nissan then crashed into Rodillas, causing

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

her car to spin around. Both cars stopped and Rodillas saw two people get out of the Nissan. Rodillas kept driving and called 911 after she got home.

The Nissan subsequently collided with another vehicle. Police responded to the scene and Lozano was arrested for driving under the influence. During a police interview he admitted having shot at someone on the freeway.

Lozano was tried three times. His first trial ended in a hung jury. A second trial resulted in convictions for driving under the influence and driving with a blood alcohol level of .08, an acquittal on the charge of having a concealed firearm in his vehicle, and a hung jury on the other counts. At his third trial, Lozano was convicted of premeditated attempted murder, assault with a firearm, shooting at an occupied motor vehicle, and possession of a firearm by a felon. He was sentenced to a prison term of life plus 40 years. On appeal, we affirmed his convictions but concluded the trial court had made several sentencing errors. As a result, we remanded for the limited purpose of resentencing.

On May 5, 2009, the trial court resentenced Lozano to concurrent life terms for the premeditated attempted murder convictions, plus concurrent terms for a firearm enhancement and the conviction for possession of a firearm by a felon. The trial court stayed sentencing on the convictions for assault and shooting at an occupied vehicle.

On August 10, 2010, Lozano filed a "Motion to Reinstate Nolo Contendere Plea and the Judgment Pronounced After that Plea." The motion asserted that, before Lozano went to trial for the first time in this matter, he had pled no contest to aggravated assault with a firearm use enhancement and the trial court had sentenced him to a 23-year term. However, the trial court subsequently vacated that no contest plea and sentence, and set the case for trial. There then followed Lozano's three trials. In the post-judgment motion filed after we remanded for resentencing on the appeal from his third trial, Lozano claimed the no contest plea should not have been vacated and that his maximum allowable sentence was 23 years, not the life term he received after being convicted at trial.

3

The trial court refused to reinstate Lozano's plea bargain and this new appeal followed.

## CONTENTIONS

1. The trial court erred by denying Lozano's motion to reinstate his plea bargain.

2. An error in the abstract of judgment must be corrected.

## DISCUSSION

1. *Trial court did not err by denying Lozano's motion to reinstate his plea bargain.*

Lozano contends the trial court improperly vacated his initial plea bargain and that his post-judgment motion, seeking to reinstate the agreement and impose at most a 23-year sentence, should have been granted. This claim is meritless. The record shows Lozano's no contest plea was properly vacated for two valid reasons: the originally agreed-upon sentence was illegal, and Lozano personally announced he wanted to go to trial.

a. *The no contest plea and its withdrawal.*

On April 29, 2005, facing an information charging two counts of attempted murder, shooting at an occupied motor vehicle, assault with a deadly weapon, and felon in possession of a firearm, Lozano pled no contest to assault with a deadly weapon with a firearm enhancement (§ 12022.53, subd. (c)) and the remaining counts were dismissed. Pursuant to the negotiated plea agreement, Lozano was sentenced to a 23-year prison term, consisting of 3 years for the assault and 20 years for the firearm enhancement.

On May 6, 2005, there was a court hearing at which Lozano was not present, although he was represented by counsel. The prosecutor said a problem had arisen with the plea agreement because the 20-year enhancement under section 12022.53, subdivision (c), did not properly apply to Lozano's assault conviction; rather, the

4

correct enhancement would have been a 10-year term under section 12022.5.[2] The prosecutor argued the no contest plea should be vacated because the agreed-upon sentence was invalid. The prosecutor also said he had offered Lozano a new plea bargain carrying a 19-year sentence. Defense counsel Michael Norris said he had been informed by Lozano's wife that Lozano had hired a new attorney, Matthew Fletcher, and was no longer interested in a plea bargain. Norris said he had been informed that Fletcher was prepared to go to trial.

After a pause in the proceedings, an "appearance counsel," Mary Quillin, spoke on behalf of Fletcher and confirmed Lozano had decided to go to trial. Quillin said Fletcher would be able to file a motion to set aside the no contest plea within three weeks. The trial court ruled Fletcher would have to make a personal appearance if he wanted to substitute in as Lozano's attorney. The matter was continued.

On May 10, 2005, a hearing was held at which Fletcher and Lozano both appeared. The trial court explained the sentencing error in the plea bargain and the new 19-year offer. Fletcher said he had discussed the new offer with Lozano and that Lozano wanted to go to trial. The court asked Lozano directly if he wanted to substitute Fletcher for Norris and go to trial, and Lozano said yes. The trial court ruled the no contest plea entered on April 29 would be set aside "based upon operation of law and the legal insufficiencies in arriving at this particular number of years."

On July 11, 2005, the prosecution announced it was unable to proceed, and the case was dismissed.

On August 15, 2005, the prosecution refiled the case. Lozano was now charged with two counts of premeditated attempted murder with firearm

---

[2] The 20-year enhancement under section 12022.53, subdivision (c), only applies to subdivision (d) of section 245 (assault with a firearm on a peace officer or firefighter). (See § 12022.53, subd(a)(7).)

5

enhancements, two counts of aggravated assault with firearm enhancements, carrying a concealed weapon, shooting at an occupied motor vehicle, driving under the influence, driving with a blood alcohol level of .08 percent, and being a felon in possession of a firearm.

Lozano's three trials followed. The first trial ended in a hung jury. The second ended in convictions on the Vehicle Code charges, an acquittal on the concealed weapon charge, and a hung jury on the remaining counts. In the third trial, Lozano was convicted of premeditated attempted murder, assault with a firearm, shooting at an occupied motor vehicle, and possession of a firearm by a felon. The trial court sentenced him to a term of life plus 40 years. Lozano appealed.

On November 19, 2008, this court affirmed the convictions but remanded for the correction of several sentencing errors. On May 5, 2009, the trial court announced it would resentence Lozano to two life terms. On August 10, 2010, Lozano filed a motion to reinstate his no contest plea.[3] On April 15, 2011, following extensive briefing and argument, the trial court denied the motion and resentenced Lozano. This appeal followed.

b. *Procedural history of the plea withdrawal.*

At the beginning of this case, on April 29, 2005, Lozano entered a no contest plea and was sentenced to state prison for a term of 23 years.

At the very outset of the next court hearing, on May 6, 2005, the following colloquy occurred with regard to the need for resentencing because the bargained-for sentence was illegal:

---

[3] The motion, filed by Lozano's new attorney, Jaclin Awad, asserted the no contest plea had never been properly withdrawn and should now be given effect. The motion argued: Lozano had not himself withdrawn the plea; section 1018 prohibited any withdrawal of a guilty plea after the entry of judgment; and, the trial court lacked jurisdiction to set aside the plea, hold a trial, or impose a sentence exceeding 23 years.

"Mr. Norris [defense counsel]: I've spoken with Mr. Frisco [the prosecutor] since the sentencing . . . and I have prevailed upon him to reduce this sentence down to 19 years on Mr. Lozano's behalf.

"The Court: Okay.

"Mr. Norris: Mr. Lozano was going to be here this morning. We were going to do the re-sentencing. My understanding from talking to his wife this morning is that they have now retained Matt Fletcher to be his lawyer and that Mr. Lozano does not want either the original offer or the new offer, and that Mr. Fletcher is going to be here prepared to go to trial. [¶] I would like to put this over, since Mr. Lozano is a missout, until Tuesday and perhaps someone from Mr. Fletcher's office can be here on Tuesday, Your Honor.

"The Court: Well, first of all, so I guess we got to entertain the motion to set aside the plea."

The prosecutor then said: "The problem is that when taking the plea last week, I was asked to take a plea with regard to the gun enhancement. The gun enhancement does apply but the gun enhancement applies under [section] 12022.5, which is 10 years. It does not apply under [section] 12022.53 unless the victim is a firefighter or police officer. So the sentence given is not the correct one, so we'd have to set aside the plea. [¶] The question then is I had to choose between giving him 19 or 26. I spoke to Mr. Norris. I believe the equities in this case militate in favor of giving a 19-year sentence and I've agreed to do that. [¶] If he sets the plea aside and Mr. Fletcher wants to go to trial, obviously, all bets are off . . . ."

There was then a pause in the proceedings, after which Mary Quillin announced she was "appearing for attorney Matthew Fletcher who's substituting in on this case." Quillin said: "I understand that Mr. Fletcher has been ordered here on Tuesday the 10th. Unfortunately, Mr. Fletcher is in trial [on a criminal case] in Long Beach . . . and requests a three-week continuance." The prosecutor responded: "Well, the problem is, he's already pled so the status of that case is somewhat settled. If he wants to make a motion to set aside the plea, we can entertain that." Quillin

7

responded: "Yes, I understand there is a plea but I understand that the defendant has decided he doesn't want to take the deal and does not want to agree to the sentencing. [¶] So based on what Mr. DA says, the motion to set aside the plea needs to be taken."

There followed some discussion about Fletcher's availability, which concluded with this colloquy:

"[The Court]: This is a serious case. His client has serious charges. He's looking at life, and I can't imagine a lawyer whose client is looking at life being too busy to come to court.

"Ms. Quillin: And I understand that the deal that the defendant wants to get out of is a deal for 23 years.

"The Court: That's incorrect. It's 19 years.

"Mr. Frisco [the prosecutor]: It's 19. It was 23."

Quillin also said: "[M]y understanding is Mr. Fletcher was contacted by the family maybe yesterday so I will pass all of this on."

On May 10, 2005, Lozano himself appeared in court along with Fletcher, who began the hearing by asking to be substituted in as Lozano's attorney. In recapping the recent events, the prosecutor told the trial court: "After speaking to [Mr. Norris] and given the defendant's minimal record, I very begrudgingly went along with giving him an offer of a lesser sentence of 19 years. [¶] The defendant, I thought, would be taking that offer; however, when we were in court last, he decided he wanted to substitute another attorney. . . . and I understand he does not want to avail himself of the People's offer."

After checking on Fletcher's availability to start trial, the court said: "I am going to set aside the plea. The plea at this point is legally insufficient. Based upon – [¶] [The prosecutor]: Invalid. [¶] The Court: Based upon the facts presented to the court, just by operation of law, I am going to set aside the plea. So basically it is zero of 60. I just want to make sure that you'd be ready to go to trial." Fletcher said he had explained the prosecution's final offer to Lozano, and

told Lozano that "if he loses . . . he's never getting out, not with those type of convictions. . . . I have explained that to Mr. Lozano. He's explained to me that he wants to have his trial, regardless of the consequences."

The trial court then turned to Lozano:

"[The Court:] And you understand what's going on, Mr. Lozano?

"The defendant: Yes, Your Honor.

"The Court: And this is what you want to do? You want to basically substitute Mr. Fletcher in for [Mr. Norris] and take this matter to trial?

"The defendant: Yes, Your Honor."

The trial court then substituted Fletcher in as defense counsel and announced: "There was a plea that was entered on April 29th, 2005. That plea is going to be set aside, based upon operation of law and the legal insufficiencies in arriving at this particular number of years. So the day will be zero of 60."

c. *Discussion*.

Lozano argues the logic of two cases, *People v. Jackson* (1981) 121 Cal.App.3d 862, and *Johnson v. Superior Court* (1981) 121 Cal.App.3d 115, demonstrates the trial court erred by vacating his no contest plea when it learned the plea bargain contained an illegal sentence. We disagree.

As Lozano notes, the crucial question here is how the situation should have been remedied once it became apparent he could not legally be sentenced to a 20-year firearm enhancement term under section 12022.53, subdivision (c), but at most a 10-year firearm enhancement term under section 12022.5. However, Lozano's preferred solution, that his no contest plea should have been retained with the illegal sentence "corrected," was not an available remedy because it would have violated fundamental principles of plea bargaining.

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] . . . 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of

9

such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties. [Citations.]' [Citations.]" (*People v. Shelton* (2006) 37 Cal.4th 759, 767.) It is well-settled that no proposed plea bargain is complete until it has been approved by the trial court. "Judicial approval is an essential condition precedent to the effectiveness of the 'bargain' worked out by the defense and prosecution." (*People v. Orin* (1975) 13 Cal.3d 937, 942-943.) "The court, of course, always retains the discretion not to sentence in accordance with the terms of the plea, especially if it subsequently learns of facts or law that render the agreed sentence inappropriate. (§ 1192.5.)" (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1385.)

As our Supreme Court has explained: "Critical to plea bargaining is the concept of reciprocal benefits. *When either the prosecution or the defendant is deprived of benefits for which it has bargained, corresponding relief will lie from concessions made.* Thus, we held in *People v. Delles* (1968) 69 Cal.2d 906, 910 . . . , that a judgment contrary to the terms of a plea bargain may not be imposed without affording the defendant an opportunity to withdraw his guilty plea. [Citations.] And we held in *In re Sutherland* (1972) 6 Cal.3d 666, 672 . . . , that when the defendant withdraws his guilty plea or otherwise succeeds in attacking it, counts dismissed pursuant to a plea bargain may be restored. [Citations.]" (*People v. Collins* (1978) 21 Cal.3d 208, 214-215, italics added.) This last result is required because "[t]he state, in entering a plea bargain, generally contemplates a certain ultimate result; integral to its bargain is the defendant's vulnerability to a term of punishment." (*Id.* at p. 215.)

"The goal in providing a remedy for breach of the bargain is to redress the harm caused by the violation without prejudicing *either* party or curtailing the normal sentencing discretion of the trial judge. The remedy chosen will vary depending on the circumstances of each case. Factors to be considered include who broke the bargain and whether the violation was deliberate or inadvertent . . . . Due process

10

does not compel that a particular remedy be applied in all cases. [Citation.]" (*People v. Mancheno* (1982) 32 Cal.3d 855, 860, italics added; see *People v. Kim* (2011) 193 Cal.App.4th 1355, 1360 ["the sentencing court is *not* bound by the bargain, but is empowered to disapprove it and deny it[s] effect, at least so long as the parties can be restored to their original positions"].)

What these fundamental principles mean is that, when a negotiated plea bargain agreement breaks down, the proper remedy is to give both parties – to the extent possible – the benefits they bargained for without one party receiving an undeserved windfall at the expense of the other.

Thus, in *People v. Collins, supra,* 21 Cal.3d 208, the defendant had pled guilty to one count of oral copulation in return for the dismissal of 14 other counts, a "by means of force" allegation, and a prior felony conviction allegation. Because of the defendant's mental problems, sentencing was delayed while he was treated at Patton State Hospital. However, by the time of his subsequent sentencing the Legislature had done away with the crime of consensual oral copulation and, therefore, the sentence called for by the negotiated plea bargain could not be imposed. *Collins* agreed with the defendant that his sentence was illegal, but rejected his attempt to keep the guilty plea intact and merely "correct" the sentence: "Defendant urges that we do not reverse his conviction but rather 'correct' the sentence to 'no penalty'; apparently he desires to avoid reinstatement of the 14 counts dismissed pursuant to the plea bargain." (*Id.* at p. 214.)

*Collins* ruled such a result would be improper: "Defendant seeks to gain relief from the sentence imposed but otherwise leave the plea bargain intact. This is bounty in excess of that to which he is entitled. The intervening act of the Legislature in decriminalizing the conduct for which he was convicted justifies a reversal of defendant's conviction and a direction that his conduct may not support further criminal proceedings on that subject; but it also destroys a fundamental assumption underlying the plea bargain – that defendant would be vulnerable to a term of imprisonment. The state may therefore seek to reestablish defendant's

vulnerability by reviving the counts dismissed." (*People v. Collins, supra,* 21 Cal.3d at p. 215, fn. omitted.)

A similar result was reached in *People v. Enlow* (1998) 64 Cal.App.4th 850, where the defendant pled guilty to auto theft and admitted a prior auto theft conviction in return for the dismissal of numerous other counts and four prior prison term enhancement allegations. The defendant was sentenced to the agreed-upon term of eight years. But before the case became final, the Legislature reduced the punishment for recidivist auto theft by two years. Citing *Collins*, the *Enlow* court rejected the defendant's attempt to challenge the eight-year sentence without having to withdraw his guilty plea: "Enlow's sentence was an integral part of his plea agreement which involved the dismissal of numerous other counts. . . . [¶] Since the prison term was specifically negotiated by the parties, a reduction in the term would deprive the prosecution of one of the benefits for which it had bargained, i.e., an eight-year prison term. Enlow is not entitled to retain the benefit of the agreement (the dismissal of numerous other counts) while depriving the prosecution of its benefit (the eight-year term). Therefore, it would be improper for us to reduce the sentence. Enlow's remedy would be to seek withdrawal of his guilty plea." (*Id.* at p. 854.)

Applying these principles to the case at bar, it plainly appears that once the trial court learned the judgment included an unauthorized sentence, the court properly ruled the plea bargain had to be vacated. Lozano argues the trial court lacked jurisdiction to do this on May 10, 2005, because it had already pronounced judgment and sentence on April 29, 2005. But an unauthorized sentence may be corrected at any time. (See *People v. Gisbert* (2012) 205 Cal.App.4th 277, 282 [trial court may correct unauthorized sentence at any time]; *People v. Benton* (1979) 100 Cal.App.3d 92, 102 ["It is well established that when the trial court pronounces a sentence which is unauthorized by the Penal Code that sentence must be vacated and a proper sentence imposed whenever the mistake is appropriately brought to the attention of the trial court or the reviewing court."]; see also *People v. Sanders* (2012) 55 Cal.4th

731, 743, fn. 13] ["it is well established that the appellate court can correct a legal error resulting in an unauthorized sentence . . . at any time"].) And because the trial court knew the prosecution was prepared to offer Lozano a new plea bargain based on a 19-year prison term, the court then properly confirmed with defense counsel, and with Lozano personally, that Lozano was no longer interested in a plea bargain because he wanted to go to trial.

Lozano disagrees, arguing: "The appropriate remedies were to specifically enforce the plea bargain of 23 years by ignoring the unlawful component of the plea bargain, or to substantially specifically enforce the plea bargain by imposing a lawful sentence of 14 years . . . ." But Lozano was not entitled to some form of specific performance in this situation.

As for specifically enforcing the 23-year sentence, even *Jackson*, the case cited by Lozano, would have disallowed this remedy: "[T]he court could not legally give the defendant the benefit of his plea bargain because the 11-year sentence was not authorized by law. That portion of the plea bargain having become impossible for the court to perform, the trial court had no alternative but to permit defendant to withdraw his pleas of guilty. Even if a defendant, the prosecutor and the court agree on a sentence, the court cannot give effect to it if it is not authorized by law. [Citation.] Thus, this is not the kind of situation which would entitle defendant to specific performance of the plea bargain [citations]." (*People v. Jackson, supra,* 121 Cal.App.3d at p. 869.)

As for Lozano's assertion the trial court should have retained the guilty plea and imposed a "corrected" 14-year sentence, this would have resulted in precisely the kind of undeserved windfall the Supreme Court warned against in *Collins*. This result would have allowed Lozano to plead guilty to aggravated assault with a firearm enhancement, in return for the dismissal of two attempted murder counts, a charge of shooting at an occupied vehicle, and a charge of being a felon in possession of a firearm, while voiding the bargained-for 23-year sentence. This result would have vitiated the very reason the People had for entering the plea bargain: that in

13

return for dismissing all the other charges Lozano would serve at least 23 years. Lozano was not entitled to such a windfall a mere 11 days after the illegal sentence was imposed, and he is even less entitled to it now after having gone through three trials and one appeal without having once complained about the lost plea bargain.

Lozano's assertion that the trial court somehow violated section 1018 is meritless. Section 1018[4] allows a defendant to make a good-cause showing why a guilty plea should be withdrawn, which is usually accomplished by demonstrating the plea had been entered by mistake, ignorance, lack of due diligence, or because the defendant had been induced to plead guilty in reliance on promises of leniency.[5] (See *People v. McCrory* (1871) 41 Cal. 458, 462 ["A party should not be allowed to trifle with the Court by deliberately entering a plea of 'guilty' one day and capriciously withdrawing it the next. But when there is reason to believe that the plea has been entered through inadvertence, and without due deliberation, or ignorantly, and mainly from the hope that the punishment, to which the accused would otherwise be exposed, may thereby be mitigated, the Court should be indulgent in permitting the plea to be withdrawn."].) Section 1018 involves a defendant-generated motion to withdraw a guilty plea that was allegedly entered into improvidently, not because it later turns out one aspect of the negotiated plea bargain was illegal. Hence *Johnson v. Superior Court, supra,* 121 Cal.App.3d 115, the other case cited by Lozano, is not legally applicable. Moreover, it is factually inapposite

---

[4]     Section 1018 provides, in pertinent part: "On application of the defendant at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended, the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

[5]     "The ground that the defendant was induced to plead guilty in reliance on promises of leniency or some other advantage by responsible officials connected with the case is the ground most frequently urged in support of the motion to withdraw a plea of guilty, and it has been successful in numerous instances . . . ." (4 Witkin, Cal. Criminal Law (4th ed. 2012) Pretrial, § 329, p. 610.)

14

because in *Johnson* the trial court never spoke to the defendant at all,[6] whereas here the trial court asked Lozano personally if he wanted to withdraw his no contest plea.

The trial court here properly withdrew its approval of the plea bargain as soon as it learned the proposed sentence was illegal; the court did not need Lozano's permission to do this. When the trial court spoke to Lozano during the May 10 hearing, it was not to obtain his authorization for a section 1018 motion to withdraw his guilty plea, but merely to ensure Lozano himself intended to reject the People's new plea bargain offer of 19 years. And Lozano himself made it clear he wanted to go to trial.

Hence, the trial court did not err by denying Lozano's subsequent motion to reinstate his no contest plea and plea bargain.

2. *Correct abstract of judgment.*

Lozano contends, and the Attorney General agrees, there is an error in the abstract of judgment. The abstract reflects that the sentences on counts one and two were ordered to run consecutively, but actually they were ordered to run concurrently. We will order this error corrected. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [it is proper and important to correct errors and omissions in abstracts of judgment].)

---

[6] In response to the Attorney General's assertion that section 1018 was satisfied if the defendant authorizes or adopts defense counsel's motion to withdraw a guilty plea, *Johnson* held: "[W]e cannot read the words 'himself in open court' out of the code section, as requested by the Attorney General. . . . [R]egardless of what authorization is given out of court, compliance with Penal Code section 1018 requires that a defendant make some expression in open court which authorizes or adopts a motion made on his behalf to withdraw his plea. Here, *petitioner's silence during the hearing on the motion to withdraw the plea did not satisfy this requirement.*" (*Johnson v. Superior Court, supra,* 121 Cal.App.3d at pp. 118-119, italics added.)

## DISPOSITION

The judgment is affirmed.  The abstract of judgment is to be amended to correctly reflect that the convictions on counts one and two are to run concurrently. The clerk of the superior court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

16