Filed 8/26/20  P. v. Mendoza CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICKY ANGELO MENDOZA,<br><br>    Defendant and Appellant. | A158308<br><br>(Contra Costa County<br>Super. Ct. No. 51209295) |

In 2013, a jury convicted Ricky Mendoza of first-degree murder.  (Pen. Code, § 187; statutory references are to this code.)  The jury also found a gang murder special circumstance was true (§ 190.2, subd. (a)(22)) and that Mendoza personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).  Mendoza was sentenced to life in prison without the possibility of parole (LWOP) for the special circumstance murder and an additional term of 25 years to life for the firearm enhancement.  This court affirmed the judgment against Mendoza in 2017.  (*People v. Mendoza* (May 22, 2017, Al39901) [nonpub. opn.] (*Mendoza I*).)

Before our decision in *Mendoza I* became final, the Legislature enacted Senate Bill 620, which gave trial courts discretion to strike or dismiss section 12022.53 firearm enhancements.  (§ 12022.53, subd. (h), as amended by Stats. 2017, § 2.)  Therefore, this case was remanded for the trial court to

1

consider whether to strike Mendoza's firearm enhancement. (*People v. Mendoza* (Oct. 26, 2018, A139901) [nonpub. opn.] (*Mendoza II*).) The present appeal is from an August 2019 order denying Mendoza's motion to strike his firearm enhancement and his LWOP sentence. We affirm.

## RELEVANT BACKGROUND

### I. Mendoza's Murder Conviction and Sentence[1]

On August 20, 2011, Martin Navarro was shot and killed while attending a party in the garage of an Antioch home where two young men were celebrating their 18th birthday. (*Mendoza I*, at pp. 1, 3–5.) In 2012, Mendoza and several co-defendants were charged with Navarro's murder and the attempted murder of another person at the party. The case went to trial early the following year and the jury deadlocked. (*Mendoza I*, at pp. 11–12.) A few months later, the People filed an amended information charging Mendoza and a man named Moreno with Navarro's murder. (*Id*. at p. 12.)

At a jury trial in 2013, the prosecution presented evidence that Mendoza and Moreno went to the Antioch birthday party with a group of friends. (*Mendoza I*, at p. 2.) The men in their group were members of the Norteño criminal street gang. (*Id*. at p. 3.) A woman in their group saw Navarro, who was associated with the Sureño street gang, and complained to her friends that Navarro had snitched on a Norteño gang member. Moreno approached Navarro and punched him twice in the face, attempting to start a

---

[1] We grant Mendoza's request for judicial notice of our decision in *Mendoza I* and take notice of *Mendoza II* pursuant to our own motion. Mendoza also requests judicial notice of the record on appeal in *Mendoza I* and of court documents concerning his former co-defendants. We deny these requests because the facts supporting Mendoza's murder conviction are not subject to dispute in this appeal, and Mendoza fails to articulate a valid theory of relevancy. (See *People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6 [irrelevant material not the proper subject of judicial notice].)

fight. (*Id.* at pp. 3–4.) Navarro tried to leave, but Mendoza shot him twice in the stomach and two more times as Navarro turned away. (*Id.* at p. 5.)

The jury found Mendoza guilty of first-degree murder and that multiple enhancement allegations were true, including gang murder enhancements and firearm use enhancements. The trial court imposed a sentence of life without the possibility of parole, with a consecutive term of 25 years to life. (*Mendoza I*, at p. 12.)

Mendoza appealed the judgment on five grounds: erroneous admission of uncorroborated accomplice testimony; insufficiency of the evidence; unconstitutional restriction on cross-examination; prosecutor misconduct; and cumulative error. (*Mendoza I*, at pp. 13–54.) Mendoza did not challenge any aspect of his sentence. In *Mendoza I*, this court rejected Mendoza's claims and affirmed the judgment in its entirety.

Before our decision in *Mendoza I* became final, we granted Mendoza's request to recall the remittitur so that he could benefit from a recent amendment to section 12022.53 subdivision (h), which gives trial courts discretion to strike firearm enhancements that were previously mandated by this statute. (§ 12022.53, subd. (h); see *People v. McDaniels* (2018) 22 Cal.App.5th 420, 424–425 [amended section 12022.53 applies retroactively to cases not yet final on appeal].) In October 2018, we filed a brief opinion re-affirming our decision in *Mendoza I*, except that instead of affirming the judgment in its entirety we remanded Mendoza's case for the limited purpose of allowing the trial court to consider whether to strike Mendoza's firearm enhancement. (*Mendoza II*.)

## II. The Present Appeal

In July 2019, Mendoza filed a motion to strike his firearm enhancement in the interests of justice. The motion characterized Navarro's

murder as the tragic consequence of a gang lifestyle and presented Mendoza to the court as a changed man, who has accepted responsibility for his poor choices and manifested a desire to learn, grow and become a better person. By separate argument, Mendoza asked the court to reconsider his sentence for the murder conviction. Mendoza argued his LWOP sentence constitutes cruel and unusual punishment and violates equal protection because he was only 19 when Navarro was murdered, and the same characteristics of youth that make LWOP sentences unconstitutional for juveniles continue past the age of 18 into a person's early 20's.[2]

Mendoza submitted 25 exhibits in support of his motion, which included excerpts from prison records, letters from supporters, and letters Mendoza wrote while in prison. In a July 17, 2018 letter, Mendoza shared his story with a church youth group. He talked about becoming involved in gangs and criminal activity when he was 12 or 13 and stated that he was only 18 when he was accused of a murder he did not commit. Mendoza told the youth group that he was convicted of this murder because he kept silent in order to protect a friend and avoid being a snitch. Mendoza explained that after he was sent to prison, he dropped out of the gang and changed his life. And he expressed gratitude for the community support he has received while pursuing his appeal.

Another undated letter from Mendoza was addressed to the judge who presided at his trial and would decide his motion for resentencing. Mendoza stated that he was 18 when he was arrested for murder and only 20 when he was sentenced. Since then, he has dropped out of the gang and tried to better

---

[2] The motion to strike Mendoza's firearm enhancement stated incorrectly that he was 19 when Navarro was killed. Mendoza was 18 years and 8 months old when the murder occurred.

4

himself. Mendoza stated that he would not make excuses for his prior actions, including some setbacks in prison, but he asked the court to consider his commitment to changing his life and helping others to "stay out of the life" that he once lived.

On August 1, 2019, the court held a hearing on the resentencing motion. Mendoza waived his right to be present at the hearing and his counsel advised the court that Mendoza wanted the matter decided in his absence. The court stated that it had considered Mendoza's motion and supporting evidence, reviewed the court's notes from the jury trial, and considered the appellate decision in *Mendoza I*. The People did not file a response to Mendoza's motion but opposed it at the hearing. The court invited argument from both sides and asked questions before making its ruling.

Defense counsel spent considerable time arguing that the trial evidence did not establish that Mendoza shot Navarro. Beyond that, counsel argued that Mendoza is a beautiful and thoughtful person who has been victimized by gang members to whom he "had ostensibly sworn allegiance." Counsel described ways that Mendoza has bettered himself through education and programs, has helped others, and has earned the trust of his many supporters.

Defense counsel stated that his argument for striking the firearm enhancement "dovetails" with Mendoza's request to reconsider his LWOP sentence because recently enacted law prohibits persons 18 years or younger from receiving LWOP sentences. Counsel stated Mendoza was 19 when the murder occurred, but he argued that Mendoza "was youthful, and certainly youthful in the understanding of current science and neurology," which shows that the prefrontal cortex is not fully developed until the age of 25.

5

The People objected to Mendoza's attempt to undermine the jury's verdict, which establishes that Mendoza shot and killed Navarro. Disputing that Mendoza has changed, the People argued that Mendoza's commitment to a life of crime is reflected in his tattoos, which state "Can't Stop Won't Stop," and "Real Shooter, S.K., Scrap Killer." The People also produced evidence of a pending criminal complaint charging Mendoza with committing felony assault while in prison. According to the district attorney, Mendoza was being prosecuted "for savagely beating another prison inmate with four other people, including other convicted murderers."

The People argued further that Mendoza's own exhibits establish that he is not entitled to discretionary relief. First, prison records reflect that Mendoza has incurred multiple disciplinary actions. Second, Mendoza's self-serving letters make no mention of the murder victim, show neither reflection nor insight, and accept no responsibility for what happened at the 2011 birthday party. Contending that Mendoza has focused only on how the incident impacted him, the district attorney pointed out that his letters do not even acknowledge a human life was lost.

The trial court asked defense counsel about Mendoza's discipline record while in prison. Aside from the pending assault charge, Mendoza had six disciplinary actions between 2015 and 2017 that resulted in the loss of conduct credits. Defense counsel explained that these records were produced in support of the motion because Mendoza did not want to hide anything from the court. Counsel argued that Mendoza had been involved in prison conflicts because he dropped out of the gang and lost their protection. Counsel suggested that Mendoza was motivated by the spiritual teachings of Gandhi to denounce cowardice, and he believed that reacting to a situation with violence was preferable to cowardice.

6

Defense counsel also acknowledged that the police report pertaining to the pending assault charge suggested that when a fight broke out Mendoza took the opportunity to "get his licks in on somebody, or everybody." But counsel disputed this suggestion, arguing that Mendoza's true character was reflected in an exhibit that described another prison fight in which Mendoza had intervened in order to protect a guard. Counsel argued that Mendoza was a man of faith and "indomitable will," who preferred nonviolence, but when presented with the choice of being a coward or defending himself, he was prepared to defend himself.

After the matter was submitted, the court framed its inquiry as whether Mendoza should be "deemed" to be "outside the spirit" of the firearm enhancement law. To make this determination, the court had to consider the nature and circumstances of the current offense, Mendoza's prior record, including his juvenile record, and Mendoza's background, character and prospects. Elaborating further, the court stated that "many, many factors" were potentially relevant.

Regarding the current offense, the court would not "debate" whether Mendoza was the shooter or was guilty of murder. The court explained that it had heard the evidence firsthand at trial and that the jury also heard all the evidence before returning its verdict. In considering the current offense, the court also observed that there were aggravating circumstances, including the fact that the victim was attempting to retreat when he was shot, and there were no mitigating circumstances.

In considering Mendoza's background, the court took account of Mendoza's substantial juvenile record, which includes a history of violence and gang activity, and some probation violations. The court noted that when Mendoza's wardship was terminated, the probation officer had been

convinced that Mendoza understood the negative impact of his past associations, but eight months later he participated in a gang murder.

In considering Mendoza's personal circumstances, the court took account of Mendoza's age, stating that he was 19 when the offense was committed, which was too young to be involved in such activity. The court also considered the letters Mendoza submitted, including his letter to the court. It observed that Mendoza grew up without support from his father and may have felt he had to be the man of the family when he was very young. There was also evidence that Mendoza's life was not "impossible" or "bad," and that he had been loved by his family. But the court did not "make light of the fact that [Mendoza's] life was challenging as a youth."

As for conduct since incarceration, Mendoza had made a serious effort to better himself. However, his disciplinary record was concerning. The police report for the pending assault charge did not support the defense claim that Mendoza acted in self-defense or for survival, and the court was troubled by parallels between this recent incident and Mr. Navarro's murder. The court was "very sorry to see this new allegation," especially when Mendoza had the support and love of many people.

Ultimately, the court concluded Mendoza was not entitled to relief from the firearm enhancement. As for the request to reconsider Mendoza's LWOP sentence, the court found it did not have authority to "strike" the sentence, but even if it did have such discretion, it would not exercise it in this case given Mendoza's history and the nature of his offense.

## DISCUSSION

### I. The Firearm Enhancement

As a preliminary matter, we note that *Mendoza I* does not contain a comprehensive discussion of Mendoza's sentence because he did not claim

any sentencing error had occurred.  The minute order from the original sentencing hearing, which is in our appellate record, indicates that the jury made express findings that Mendoza personally used a firearm (§ 12022.53, subd. (b)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).  The jury also found true an allegation that Mendoza was an active participant in a criminal street gang when the principal who committed Navarro's murder (i.e. Mendoza himself) personally used a firearm in the three ways specified above (§ 12022.53, subd. (e)(1)).  In light of these findings, the court imposed a consecutive term of 25 years to life under section 12022.53, subdivision (e)(1), thus enhancing Mendoza's murder sentence to reflect the fact that he personally and intentionally used a firearm causing death and that he did so as an active participant in a criminal street gang.

With his present appeal, Mendoza contends that the resentencing court erred by declining to strike this firearm enhancement, arguing that the Legislature did not intend for the enhancement to apply under the circumstances presented here.  We disagree.

Section 12022.53, subdivision (h) provides that "[t]he court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."  A ruling under this provision is reviewed for abuse of discretion. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116.)  Two principles guide our review.  " 'First, " [t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] . . . .' "  Second, a " 'decision will not be reversed merely because reasonable people might disagree.  "An appellate tribunal is neither

9

authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' " (*Ibid*.)

Here, the trial court's ruling was neither arbitrary nor irrational. According to the jury's verdict, Mendoza used a firearm to commit an unprovoked murder at a crowded birthday party, endangering the lives of many young people for the sole purpose of advancing the criminal agenda of his gang. Although Mendoza was only 18 when he committed murder, he had accumulated a substantial juvenile record. Moreover, even after Mendoza was incarcerated for his current offense, he continued to incur disciplinary actions including, at the time of the resentencing hearing, a pending complaint for assault causing great bodily injury. The court concluded that these circumstances outweigh evidence that Mendoza has taken steps to improve himself and make a positive impact on others, and we cannot say this decision was arbitrary or irrational.

Mendoza argues the trial court abused its discretion by failing to consider several sentencing factors outlined in the California Rules of Court, including whether the enhancement is necessary to punish Mendoza, deter future criminal activity or protect public safety. (See Cal. Rules of Court, rule 4.410.) A sentencing court is required to consider all relevant factors enumerated in the California rules of court, but on appeal such factors are "deemed to have been considered unless the record affirmatively reflects otherwise." (Cal. Rules of Court, rule 4.409; see also *People v. Pearson, supra*, 38 Cal.App.5th at p. 118.) Nothing in this record indicates the trial court failed to consider any relevant factor. To the contrary, the court was careful

10

to explain that it reviewed all the evidence and considered all of the factors relevant to Mendoza's motion.

Mendoza contends the trial court abused its discretion because it failed to consider whether imposing the 25 year to life sentence enhancement is within the "spirit" of Senate Bill 620. According to this argument, a sentencing decision under section 12022.53 is comparable to a sentencing decision under the three strikes law, which requires the court to consider whether a defendant's circumstances indicate that he or she should be deemed to fall outside the spirit of the statutory sentencing scheme. (See e.g. *People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) Purporting to extend the reasoning of these three strike cases, Mendoza argues that the trial court abused its discretion by failing to consider that the spirit behind Senate Bill 620 was to reduce long sentence enhancements because they are expensive and perpetuate racial disparity in prisons.[3]

Mendoza's legal analysis is flawed. Under the reasoning of *Williams*, the sentencing court should consider whether a defendant falls within the spirit of a sentence enhancement by looking to the purpose of the statutory scheme. Our Supreme Court has found that the intent behind section 12022.53 is to implement the Legislature's finding " 'that substantially longer prison sentences must be imposed on felons who use firearms in the commission of their crimes, in order to protect our citizens and to deter

---

[3] We grant Mendoza's request for judicial notice of a 2017 report prepared by the Senate Committee on Public Safety, addressing proposed amendments to section 12022.25 and section 12022.53.

Mendoza also requests judicial notice of an excerpt from a Senate Appropriations Committee report regarding section 3051, and an excerpt from the Legislative Counsel's Digest introducing Senate Bill 889, which proposes expanding juvenile wardship jurisdiction. Both requests are denied because this material is not relevant to Mendoza's appeal.

violent crime.' " (*People v. Garcia* (2002) 28 Cal.4th 1166, 1172.) This purpose was elucidated by Senate Bill No. 620, which "has the laudatory purpose of giving trial courts the discretion to strike firearm enhancements, which often comprise the bulk of a sentence, when doing so is in the interest of justice." (*People v. Fox* (2019) 34 Cal.App.5th 1124, 1139, review granted July 31, 2019, S256298.) We find no authority for requiring a court exercising its discretion under section 12022.53 to address in the sentencing colloquy broad social policies, such as the financial consequences or racial justice implications of long prison sentences.

In this case, the trial court explicitly stated that the purpose of its inquiry was to determine whether Mendoza falls outside the spirit of the firearm enhancement law. It went on to provide a detailed explanation for its ruling that Mendoza does not fall outside the spirit of that law. Mendoza fails to establish that the ruling was an abuse of discretion.

## II. Mendoza's LWOP Sentence

Mendoza contends that his LWOP sentence violates federal and state prohibitions against cruel and unusual punishment. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) The resentencing court found that it lacked authority to strike Mendoza's LWOP sentence. We agree because the record shows that this issue was not properly before the court at the remand proceedings. Although the appellate briefs overlook this fact, the parties have addressed this dispositive issue in supplemental letter briefs.

When Mendoza's case was remanded, " 'the terms of the remittitur define[d] the trial court's jurisdiction to act.' " (*People v. Dutra* (2006) 145 Cal.App.4th 1359, 1367.) Mendoza's case was remanded for the sole purpose of giving the trial court the opportunity to exercise its discretion to strike the firearm enhancement in a decision that explicitly affirmed all other aspects of

the judgment (including the LWOP sentence). Since the trial court was bound by the terms of the remittitur, it lacked authority to entertain Mendoza's request to address an issue that was outside the scope of the remittitur.

Mendoza argues that the cruel and unusual punishment issue was squarely raised and argued at the resentencing hearing, but he fails to cite any statutory ground or case law support for unilaterally expanding the scope of the remand order. Mendoza filed his motion to dismiss his firearm enhancement under section 12022.53, subd. (h) and section 1385. Neither statute authorized the trial court to adjudicate Mendoza's untimely challenge to his LWOP sentence. Absent a petition for habeas corpus alleging ineffective assistance of counsel, or some comparable procedural mechanism, we find no basis for Mendoza's view that the trial court had authority to reconsider the LWOP sentence.

At the resentencing hearing, Mendoza's counsel intimated that Mendoza could challenge his LWOP sentence for the first time at that hearing because it dovetailed with the trial court's new discretion to strike the section 12202.53 firearm enhancement. We disagree that a challenge to Mendoza's LWOP sentence was properly attached to the court's reconsideration of the firearm enhancement. When Mendoza was sentenced in August 2013, the firearm enhancement was mandatory, but Mendoza's LWOP sentence was imposed for a different reason under a different statute. At the original sentencing, the court did have authority to decide whether Mendoza's LWOP sentence for a special circumstance first degree murder

13

constituted cruel and unusual punishment.  However, Mendoza did not make that claim.[4]

In his supplemental brief, Mendoza argues that this court should entertain his cruel and unusual punishment claim for three reasons:  the remand order does not explicitly preclude him from raising this claim; the resentencing court did reach the merits of this claim; and, this court should exercise its discretion to address the constitutionality of Mendoza's sentence, in the interests of justice and judicial economy and to forestall a future ineffective assistance of counsel claim.  These arguments are all unsound.

The remand order is explicit and unambiguous; it authorizes the resentencing court to consider whether to strike a firearm enhancement. (*Mendoza II*.)  It does not give the resentencing court jurisdiction to consider any other claim.  Furthermore, the resentencing court did not decide the merits of Mendoza's LWOP challenge by speculating about what it would do if the matter had been properly raised.  More fundamentally, we reject Mendoza's false premise that the terms of a remittitur can be expanded by deciding an issue that is beyond its scope.  Finally, the interests of justice would not be served by permitting Mendoza to appeal an issue that the trial court did not have jurisdiction to entertain.

### III.  Mendoza's Right to Effective Assistance of Counsel

Finally, Mendoza contends his right to the effective assistance of counsel was violated during the resentencing proceedings because his counsel

---

[4] Mendoza's LWOP challenge was not only outside the scope of the remand order, it was also forfeited.  Mendoza failed to object at the original sentencing hearing and/or to pursue in *Mendoza I* the argument that his sentence constitutes cruel and unusual punishment.  (See *People v. Speight* (2014) 227 Cal.App.4th 1229, 1247; *In re Harris* (1993) 5 Cal.4th 813, 834.)

informed the court that Mendoza was 19 at the time of the murder, when in fact he was only 18.

"A criminal defendant is guaranteed the right to the assistance of counsel by both the state and federal Constitutions. [Citations.] 'Construed in light of its purpose, the right entitles the defendant not to some bare assistance but rather to effective assistance.' " (*People v. Wharton* (1991) 53 Cal.3d 522, 575, italics omitted.) " ' "In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof." ' " (*People v. Lucas* (1995) 12 Cal.4th 415, 436.) "A defendant must prove prejudice that is a ' "demonstrable reality," not simply speculation.' [Citations.] Prejudice requires 'a reasonable probability that a more favorable outcome would have resulted . . ., i.e., a probability sufficient to undermine confidence in the outcome.' " (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

When considering an ineffective assistance of counsel claim, the appellate court " 'need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.' " (*People v. Fairbank*, *supra,* 16 Cal.4th at p. 1241, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 697.) If an ineffective assistance claim is easier to resolve on the ground of lack of sufficient prejudice, we have been instructed to follow that course. (*Ibid*.)

Here, Mendoza fails to demonstrate prejudice but simply posits that his trial counsel's failure "to adequately investigate and correctly inform the trial court of Mendoza's young age undermines confidence in the judgment."

However, the record shows that the court was repeatedly advised of Mendoza's young age and that there was never any confusion about the fact that Mendoza was not a juvenile but a very young adult when he committed the murder. It is not reasonably likely that the outcome of these proceedings would have been different if Mendoza's counsel had stated that Mendoza was 18 rather than 19 when the crime occurred.

## DISPOSITION

The judgment is affirmed.

_____

TUCHER, J.

WE CONCUR:


_____

POLLAK, P. J.


_____

STREETER, J.

*People v. Mendoza* (A158308)

17